IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-2550-WYD-KMT

KRISTINA HILL,
BRIAN EDWARDS, and
THOMAS PRIVITERE,

Plaintiffs,

v.

PUBLIC ADVOCATE OF THE UNITED STATES,
a District of Columbia corporation,

Defendant.

___

**MEMORANDUM IN SUPPORT OF DEFENDANT PUBLIC ADVOCATE OF THE
UNITED STATES' MOTION TO DISMISS**
___

Defendant Public Advocate of the United States ("Public Advocate"), by and through undersigned counsel, has filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Public Advocate submits this memorandum in support of its motion to dismiss.

### I.   BACKGROUND FACTS

Public Advocate is a non-profit District of Columbia corporation exempt from taxation pursuant to Section 501(c)(4) of the Internal Revenue Code. Complaint ¶ 20. As its name implies, Public Advocate advocates and lobbies at the national and local level on important social issues, including the promotion of traditional values with respect to marriage and the family. Complaint ¶ 20.

1

In the spring of 2012, Public Advocate prepared and mailed issue advocacy cards specifically directed to individuals registered to vote in the Republican primary races involving Colorado's 8th District and 48th District. Complaint ¶¶ 5 – 7 and 9 – 10.  For purposes of deciding Public Advocate's motion to dismiss, Public Advocate agrees that mailings to certain voters included pictures similar to those shown in the Complaint ¶¶ 5, 9 (hereinafter referred to as the "White Mailer" and the "Hare Mailer," respectively, and collectively as the "Mailers"). Copies of the White Mailer and the Hare Mailer are attached to this Memorandum as Exhibits A and B, respectively.[1]  Plaintiffs make no allegations concerning any other use of the Mailers.

The object and intent of the Mailers created by Public Advocate was to emphasize its point of view on an issue that Public Advocate deems critical to the best interests of the citizens of the United States: traditional marriage, that is, marriage between one man and one woman. Complaint ¶ 35 (Plaintiff Hill: ". . . [Edwards] called me . . . to share his discovery that one of the images I had taken during their engagement session had been . . . digitally manipulated and reproduced in a campaign targeting a senator for her vote in support of a bill allowing same-sex couples to form civil unions.")  The Mailers, and the images included thereon, emphasize Public Advocate's concern with this issue by focusing the voters' attention on the nature of family and traditional marriage through the images selected.  Complaint ¶¶ 35-37 and 40 and Exhibit A to the Complaint (photo allegedly "misappropriated for use in anti-gay political attack mailers in Colorado . . . .").

---

[1] "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Nau Holdings, LLC v. Dlorah, Inc.*, 2010 U.S. Dist. LEXIS 14843 *7,  No. 08-cv-02743 (D. Colo. Feb. 3, 2010) *quoting Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotations omitted in original).

## II. LEGAL STANDARD AND GOVERNING LAW

Rule 12(b)(6) requires that a cause of action be dismissed if it does not set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint should survive a motion under Rule 12(b)(6) only if it "contains 'enough facts to state a claim to relief that is plausible on its face.'" *Smith v. Pizza Hut, Inc.*, 2011 U.S. Dist. LEXIS 76793 *6, No. 09-cv-01632 (D. Colo. July 14, 2011) *citing Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) *quoting Twombly,* 550 U.S. at 570. The Court should determine whether, "if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Id. quoting Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "The Court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id*. at *7 *quoting Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III. ARGUMENT

**A.    Plaintiffs' Claims Are Barred by the First Amendment.**

In their Complaint Plaintiffs have asserted copyright infringement and misappropriation of likeness claims, but this case is obviously not about plaintiffs' alleged pecuniary commercial interests in the photograph.  It is also not about Plaintiffs' privacy interest in the photograph, because they had no such interest.[2]

---

[2] Edwards and Privitere admit they placed the photograph on the Internet where anyone in the world with access to a computer could view it.  Complaint ¶ 30.

3

No, this case has nothing to do with the claims that Plaintiffs assert. This case is about one and only one thing: the politics of same-sex unions. Public Advocate used the photograph as a symbol for same-sex unions. Even plaintiffs admit this: "Defendant used the Photograph as a generic stock photo representing marriage by same-sex couples or of two men kissing." Complaint ¶ 12. Thus, Plaintiffs admit Public Advocate used the photograph to facilitate expression of its point of view on the issue of same-sex unions in the course of a political campaign, and this admission is fatal to their case.[3] Public Advocate was engaging in the type of political speech the protection of which is at the very core of the freedom of speech guaranteed by the First Amendment.

Plaintiffs obviously hold a different point of view regarding same-sex unions. Therefore, at bottom Plaintiffs' complaint is not about commercial issues or privacy issues. Instead, they object to Public Advocate's political message. That message is diametrically contrary to the message Plaintiffs desired to communicate with the photograph of the wedding kiss between two men. This point is captured succinctly in paragraphs 50 through 53 of the Complaint where Plaintiffs allege that Public Advocate's use of the photograph was "entirely antithetical to Edwards and Privitere's core beliefs," and would adversely impact "gay and lesbian youth" and their "parents" in Colorado.

In the context of the entire Complaint, therefore, it becomes obvious that both of the claims actually asserted are nothing more than makeweight substitutes for Plaintiffs' real claim – the intentional infliction of emotional distress they allegedly suffered as a result of Public Advocate's use of the photograph in the context of expressing a political point of view with

---

[3] Even if Plaintiffs had not made this admission, the Complaint would still fail, because the point of Public Advocate's use of the photograph is obvious without the admission.

which they strongly disagree.  Indeed, in the very first paragraph of the Complaint Plaintiffs allege that "[t]his case is about the defilement of a beautiful moment."  Thus, it is not surprising that instead of talking about pecuniary losses, Edwards pours out his emotional distress upon learning of Public Advocate's use of the photograph.  He says he was "shock[ed]," "angry," "hurt," "flabbergasted," and "livid," about the use of the photograph and the "big, blood-emulating slash across our bodies."  Complaint ¶ 33.  Conversely, Edwards says nothing about damages relating to his commercial or proprietary interest in the photograph.

Plaintiff Hill is a photographer and claims a copyright interest in the photograph, but even she expressed no commercial concern about her copyright interests or her artistic contribution to the photograph.  She was Edwards' college friend, Complaint ¶ 1, and she says was "[h]eart-broken" and experienced a "range of emotions," as her "heart dropped" when she learned that Public Advocate had used the photo in a way not intended by the couple.  Complaint ¶ 33.

In summary, Plaintiffs seek to hold Public Advocate liable for political speech conducted in the course of two political campaigns.  Accordingly, Plaintiffs bear one of the heaviest burdens known to American law, because "it can hardly be doubted that the constitutional [free speech] guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office."  *Buckley v. Valeo*, 424 U.S. 1, 14-15 (1976).

This case is governed by the free speech principles recently re-articulated by the Supreme Court in *Snyder v. Phelps*, __ U.S. __, 131 S.Ct. 1207 (2011).  *Snyder* centered on conduct at the funeral of Marine Lance Corporal Matthew Snyder, who was killed in the Iraq war.  Defendants, members of Westboro Baptist Church, picketed outside Snyder's funeral, carrying signs that said

5

such things as "Fag Troops," "Semper Fi Fags," "God Hates Fags," and "Fags Doom Nations." Snyder's father sued for intentional infliction of emotional distress. The Supreme Court began its analysis by stating:

> "[S]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.' *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-759, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985) (opinion of Powell, J.) (*quoting First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 776, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978)). The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.' *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). That is because 'speech concerning public affairs is more than self-expression; it is the essence of self-government.' *Garrison v. Louisiana*, 379 U.S. 64, 74-75, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964). Accordingly, '**speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection**.' *Connick v. Myers*, 461 U.S. 138, 145, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) (internal quotation marks omitted).

*Id*., __ U.S. __, 131 S.Ct. at 1215 (emphasis added).

The court held that the Westboro Baptist Church members' speech was in fact on matters of public concern and therefore completely protected by the First Amendment. Of particular importance with regard to Plaintiffs' claims here, the court held:

> Given that Westboro's speech was at a public place on a matter of public concern, that speech is entitled to 'special protection' under the *First Amendment*. Such speech cannot be restricted simply because it is upsetting or arouses contempt. '**If there is a bedrock principle underlying the *First Amendment*, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable**.' *Texas v. Johnson, 491 U.S. 397, 414, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989)*. **Indeed, 'the point of all speech protection . . . is to shield just those choices of content that in someone's eyes are misguided, or even hurtful**.' *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc., 515 U.S. 557, 574, 115 S. Ct. 2338, 132 L. Ed. 2d 487 (1995)*.

*Id*., __, U.S. __, 131 S.Ct. at 1219 (emphasis added).

The court went on to hold the church members' speech was fully protected even if it were "outrageous," because "'[In] public debate [we] must tolerate insulting, and even outrageous speech in order to provide adequate 'breathing space' to the freedoms protected by the *First Amendment*.'" *Id*., __, U.S. __, 131 S.Ct. at 1219, *quoting*, *Boos v. Barry*, 485 U.S. 312, 322 (1988).

Plaintiffs claim Public Advocate's speech defiled a "beautiful moment." Complaint ¶ 1. Even if that were so (and for the purpose of this motion to dismiss the allegation must be accepted as true), the First Amendment unconditionally precludes holding Public Advocate liable for its core political speech. As the Supreme Court noted in *Snyder*:

> Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and--as it did here--inflict great pain. On the facts before us, **we cannot react to that pain by punishing the speaker**. As a Nation we have chosen a different course--to protect even hurtful speech on public issues to ensure that we do not stifle public debate. That choice requires that we shield Westboro from tort liability for its picketing in this case.

*Id*., __, U.S. __, 131 S.Ct. at 1220 (emphasis added).

This case is very similar to *Raymen v. U.S. Senior Assoc*. 409 F.Supp.2d 15 (D.D.C. 2006). Like the photograph at issue in this case, *Raymen* involved a photograph of two men kissing at a same sex wedding. The United States Senior Association, Inc. ("Association") used the photograph as part of a campaign in opposition to public policy positions taken by the American Association of Retired Persons. Same-sex partners Steve Hansen and Richard Raymen sued the Association under a number of theories, including invasion of privacy and misappropriation of likeness. The court granted the Association's Rule 12(b)(6) motion to dismiss, holding:

7

> . . . there is no actionable appropriation of a person's likeness claim 'when a person's picture is used to illustrate a noncommercial, newsworthy article.' *Id*. This proscription is demanded by the *First Amendment*, which courts have concluded 'permits the use of a plaintiff's name or likeness when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern.' *Joe Dickerson & Assocs., LLC v. Dittmar, 34 P. 3d 995, 1003 (Colo. 2001)* . . .

*Id*., 409 F.Supp.2d at 23.

In this case the Complaint indisputably establishes that Public Advocate used a photograph of Edwards and Privitere kissing as a symbol of same-sex unions generally. The Complaint also undeniably alleges that the sole purpose of Public Advocate's use of the photograph was to express its opposition to political positions in favor of same-sex unions held by two candidates for public office. Whether one agrees with Public Advocate's position or even finds it hurtful, repulsive and beyond the bounds of decency is utterly beside the point. Indeed, as the court noted in *Snyder*, the First Amendment has its most important application in just such a case. Public Advocate's speech "occupies the highest rung of the hierarchy of First Amendment values," and therefore Plaintiffs' attempt to hold Public Advocate civilly liable for engaging in that speech must be rejected.

**B.     Public Advocate's Use of the Image in the Mailers is Protected Fair Use and Does Not Constitute Copyright Infringement.**

Even if Public Advocate's use of the photograph were not constitutionally protected free speech, Plaintiffs' copyright claim would nevertheless fail, because Public Advocate's use of the photograph clearly falls within the "fair use" safe harbor.

Hill claims ownership of a copyright registration in a photograph, U.S. Copyright Registration Number VA 1-827-483. Complaint ¶ 42 and generally. A true and correct copy of U.S. Copyright Registration VA 1-827-483 which issued to Kristina Adrienne Hill on July 3,

2012 is attached to this Memorandum as Exhibit C (Hill's address redacted). For the limited purposes of this Motion to Dismiss, Public Advocate agrees Hill possesses a valid copyright in a photograph substantially similar to the photograph shown in the Complaint at paragraph 3.

To state a claim for infringement under the U.S. Copyright Act a plaintiff must show: (1) ownership of a valid copyright; and (2) copying by the defendant of "constituent elements of the work that are original." *Denenberg v. LED Technologies, LLC*, 2012 U.S. Dist. LEXIS 140513 *4, No. 11-cv-03155 (D. Colo. September 28, 2012); *see also Bestland v. Smith*, 2006 U.S. Dist. LEXIS 80885 *10 (D. Colo. Nov. 6, 2006); *see also BC Technical, Inc. v. Ensil International Corp.*, 2008 U.S. Dist. LEXIS 69747 *7, No. 2:02-cv-700 (D. Utah Sept. 15, 2008) *aff'd* 2012 U.S. App. LEXIS 2294 No. 09-4011 and No. 09-4019 (10th Cir. Feb. 7, 2012).

The use of the image is not the end of the analysis, however, because the Copyright Act provides a safe harbor for "fair use" of works otherwise protected by copyright. 17 U.S.C. § 107. The fair use exception balances the public's right to use a work in certain instances based on the following factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

Public Advocate's use of a portion of Plaintiff's Hill's photograph is not an infringement under the Copyright Act because such use falls within the fair use exception created by 17

U.S.C. § 107. Applying the four factors set out in Section 107, each factor strongly favors a finding of fair use:

(1) *the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes*. This factor favors finding of fair use: Public Advocate is a non-profit IRC Section 501(c)(4) entity and the use of the Mailers was purely educational as part of Public Advocate's permissible efforts to inform the voters in the Colorado Republican primary regarding the issue of traditional family values. Thus, the Compliant establishes that the use was noncommercial, non-profit and educational. Complaint ¶¶ 5-7, 9-10, 20, 35 and Exhibit A to the Complaint.

(2) *the nature of the copyrighted work*. This factor favors finding of fair use: Plaintiff Hill's work is identified as "published" in Copyright Registration VA0001827483 with the date of creation listed as "2010" and the date of first publication listed as "06-13-2010." Exhibit C. In addition, Plaintiffs admit in the Complaint that the photograph was posted on the Internet, specifically on a blog. Complaint ¶ 30.

(3) *the amount and substantiality of the portion used in relation to the copyrighted work as a whole*. This factor favors finding of fair use: Comparing the elements of the photograph shown at paragraph 3 of the Complaint with those shown at paragraphs 5 and 9 of the Complaint demonstrates that Public Advocate used only the images of the two individuals from the photo and thoroughly transformed the photo by the addition of an entirely different background which removes the big city feel and places the individuals in a country setting consistent with the message and voter education purpose of the Mailers.

(4) *the effect of the use upon the potential market for or value of the copyrighted work.* This factor favors finding of fair use:  Public Advocate's transformational use of elements of the copyrighted work in the Mailers would have no appreciable impact on the commercial value of Plaintiff Hill's photograph.  Plaintiffs admit in the Complaint that the photograph was posted on a blog since approximately June 2010.  See Complaint, paragraph 30; see also Copyright Registration information for the Plaintiff Hill's photograph showing the publication date in June 2010.  Plaintiffs made no allegation in the Complaint concerning the value of the copyrighted photograph prior to, or even after, the alleged infringement by Public Advocate.  Exhibit C.

In summary, all factors under the Copyright Act favor a finding that Public Advocate's use of the image in the Mailers falls within the fair use safe harbor and therefore does not constitute copyright infringement.

**C.     Plaintiffs Edwards and Privitere Fail to Plead the Elements of a Claim for Appropriation of Likeness or Personality under Colorado Law; Alternatively, Public Advocate Possesses a Complete Privilege Against Such Claim.**

Under Colorado law, the tort of appropriation of an individual's likeness requires proof of the following elements: (1) the defendant used the plaintiff's likeness; (2) the use of the likeness was for defendant's own purposes or benefit, commercially or otherwise; (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred.  *Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995, 1002 (Colo. 2001).  Colorado recognizes a complete defense to a claim for appropriation of likeness based on a First Amendment privilege "when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern."  *Id*. at *1003 *citing Lane v. Random House, Inc.*, 985 F. Supp. 141, 146 (D.D.C. 1995) (other citations omitted).

11

Plaintiffs Edwards and Privitere fail to state a claim upon which relief can be granted because there is no allegation in the Complaint that Public Advocate used either of Plaintiff's likenesses "for defendant's own purposes or benefit." Plaintiffs affirmatively allege that Public Advocate used the Mailing as part of its role in educating voters on the issue of same-sex unions. The purpose of the Mailers was to promote the traditional family values by educating prospective voters in the races for elective office. Complaint ¶¶ 5-7, 9-10, 20, 35 and Exhibit A to the Complaint.

In *Dickerson*, the defendant published a photo of plaintiff along with information concerning plaintiff's arrest and conviction for felony theft in defendant's business newsletter promoting the defendant's private investigative services. In its decision the Supreme Court of Colorado first recognized the tort of appropriation of another's likeness, set forth the elements of that tort, and recognized a privilege under the First Amendment. The privilege "permits the use of a plaintiff's name or likeness when that use is made in the context, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern." *Joe Dickerson & Assocs., 34 P.3d*. at *1003 *citing Lane v. Random House, Inc.*, 985 F. Supp. 141, 146 (D.D.C. 1995) (other citations omitted).

When determining whether the publication is intended to communicate news, the court looks to see whether the use is (i) "primarily noncommercial," in which case the privilege will apply, or (ii) "primarily commercial," in which case the defendant is not entitled to the privilege. *Id*. The court defined "commercial speech" for purposes of applying the test as "speech that proposes a commercial transaction." *Id*. at 1004 *citing City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422-23, 123 L.Ed. 2d 99, 113 S. Ct. 1505 (1993). The court concluded that

12

Dickerson's publication of the photo of the plaintiff along with a story about her arrest was "was primarily noncommercial because it related to a matter of public concern." *Id*.

Applying these principles to this case, Public Advocate's Mailers yields an even stronger "noncommercial" result because, unlike Dickerson's business newsletter, Public Advocate's mailing did not propose a commercial transaction. The Mailers were entirely concerned with the Republican primary races in Colorado's District 8 and District 48. Public Advocate did not offer to sell anything to the recipients or even request donations in the Mailers.

Moreover, Public Advocate was speaking in a political campaign on a hot button political topic. Therefore, Public Advocate's use of the photograph was privileged, because it was "made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern." *Dickerson*, 34 P.3d at 1002. Indeed, in a case with substantially identical facts the court in *Raymen v. U.S. Senior Assoc*. 409 F.Supp.2d 15 (D.D.C. 2006), specifically cited *Dickerson* when it granted the defendant's motion to dismiss. *Id*., 409 F.Supp.2d at 23.

Therefore, Public Advocate is entitled to the dismissal with prejudice of the claim by Plaintiffs Edwards and Privitere based either on their failure to state all of the elements of their claim or based on the privilege described in *Dickerson.*

## IV.    CONCLUSION

Plaintiffs' Complaint must fail because Public Advocate's Mailers constituted core political speech and were therefore protected by the First Amendment. In addition, Plaintiff Hill has failed to state a claim with respect to the copyright infringement claim, because Public Advocate's use of the image was permitted as a proper fair use. Plaintiffs Edwards and Privitere

failed to state a claim for appropriation of likeness based on their failure to allege that the challenged use was for the benefit of Public Advocate.  Public Advocate's efforts were intended to promote the general welfare of the citizenry through its educational and informational activities.  Moreover, even if Plaintiffs Edwards and Privitere have stated a claim under Colorado law for appropriation of likeness, Public Advocate enjoys a full privilege under the First Amendment, because the use of any likeness was in the context of discussion of a matter of legitimate public concern and newsworthy.

WHEREFORE, Public Advocate of the United States prays for the entry of an order: dismissing the Complaint in its entirety, and with prejudice, for the reasons set forth above; together with such additional relief as the Court deems proper and just.

Respectfully submitted November 2, 2012.

*/s/ Barry K. Arrington*

Barry K. Arrington
Arrington Law Firm
7340 East Caley Avenue
Suite 360
Centennial, Colorado  80111
E-Mail: barrry@arringtonpc.com
Phone: 303.205.7870
Fax: 303.463.0410

Christopher M. Collins (admission pending)
Vanderpool, Frostick & Nishanian, P.C.
9200 Church Street, Suite 400
Manassas, Virginia 20110
E-Mail: ccollins@vfnlaw.com
Phone: (703) 369-4738
Fax: (703) 369-3653

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 2, 2012 a true and correct copy of the foregoing was served via the Court's the CM/ECF system on:

Daniel D. Williams, Esq.
Christopher L. Larson, Esq.
Faegre Baker Daniels LLP
1470 Walnut Street
Suite 300
Boulder, Colorado  80302-5335

Christine P. Sun, Esq.
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama  36104

Daralyn J. Durie, Esq.
Joseph C. Gratz, Esq.
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, California  94111

*/s/ Barry K. Arrington*
_____