IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02550-WYD-KMT

KRISTINA HILL,
BRIAN EDWARDS, and
THOMAS PRIVITERE,

      Plaintiffs,

v.

PUBLIC ADVOCATE OF THE UNITED STATES,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
ROCKY MOUNTAIN GUN OWNERS,
LUCIUS O'DELL,
ANDREW BROWN, and
DUDLEY BROWN,

      Defendants.

---

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiffs KRISTINA HILL, BRIAN EDWARDS, and THOMAS PRIVITERE, through their undersigned counsel, bring this action against Defendants PUBLIC ADVOCATE OF THE UNITED STATES ("PAUS"), NATIONAL ASSOCIATION FOR GUN RIGHTS ("NAGR"), and ROCKY MOUNTAIN GUN OWNERS ("RGMO"), and Defendants LUCIUS O'DELL ("O'Dell") and ANDREW BROWN of NAGR, and DUDLEY BROWN of NAGR and RMGO (collectively, the "Defendants"). Plaintiff Hill brings her copyright infringement claim against all Defendants, and Plaintiffs Privitere and Edwards bring their tort claim against Defendants RMGO and PAUS. By this First Amended Complaint, Plaintiffs seek declaratory relief,

1

compensatory damages,[1] costs and attorneys' fees, as well as any other relief to which they may

be entitled.

## PRELIMINARY STATEMENT

1.        This case is about the defilement of a beautiful moment.  Brian Edwards

("Edwards") and Thomas Privitere ("Privitere") are a married couple living in West Orange,

New Jersey.  Edwards and Privitere, like many couples, hired a photographer to memorialize

their happiness on the occasion of their engagement.  They chose Kristina Hill ("Hill"), a well-

regarded Brooklyn wedding photographer, and a college friend of Edwards.

2.        Hill is a professional photographer.  She began working as a freelance editorial

photographer eight years ago for newspapers and magazines, and for the past four years has

made her living as a professional wedding photographer.

3.        Hill made the following photograph, which became one of the couple's favorite

photos (the "Photograph"):

---

[1] Pursuant to Colorado law, Plaintiffs reserve the right to seek leave of the Court to amend their First Amended
Complaint to include a request for additional damages after initial disclosures in this litigation are exchanged.



4. Defendant PAUS is an organization which encourages discrimination against lesbian, gay, bisexual and transgender people.

5. Defendants NAGR and RMGO are Colorado-based organizations dedicated to opposing gun control and encouraging an armed American citizenry.

6. Defendant Dudley Brown is the Executive Director of RMGO and Executive Vice President of NAGR.

7. Defendant Lucius O'Dell is the Director of Operations at NAGR.

8. Defendant Andrew Brown is a member of NAGR's Creative Department.

9. In the spring of 2012, more than 3,000 residents of Colorado received the following mailer (the "White Mailer"):



10.     The White Mailer refers to Republican then-State Senator Jean White, of

Colorado's 8th District, who had supported a bill that would have granted same-sex couples the

right to enter into civil unions.  At the time, Senator White was engaged in a primary race against

another Republican for her Senate seat.

11.     The reverse side of the White Mailer identifies the sender as "Public Advocate of

the United States, 5613 Leesburg Pike, Suite 17, Falls Church, VA 22041,

PublicAdvocateUSA.org".

12.     Prior to Plaintiffs' discovery of the unlawful acts described in this First Amended

Complaint, the White Mailer was prominently featured and displayed in a *Denver Post* article

entitled, "Ugly campaign fliers hit in northwestern Colorado state Senate race," which appeared

in print and online.

13.     Senator White was also the target of at least two RMGO mailers in the spring of 2012.  One mailer, dated April 5, 2012, asserted that "Jean White is aligning herself with radical left-wing anti-gun groups like the ACLU."  The letter, which was signed by Defendant Dudley Brown in his capacity as Executive Director of RMGO, urged recipients to "contact Jean White and tell her to change her position on the Second Amendment."  Another RMGO mailer, also signed by Defendant Dudley Brown, urged recipients to "thank" Senator White's opponent for "pledging his long history of 100% support for your right to keep and bear arms."

14.     Nearly 4,400 other Colorado residents received a different mailer, also using Hill's photo of Edwards and Privitere, this one referring to Jeffrey Hare, then a Republican candidate for Colorado House District 48 (the "Hare Mailer"):



15.     As with the White Mailer, the back of the Hare Mailer identifies PAUS as the sender, and lists PAUS's address and website URL.

16.     Although only PAUS's name appears on the Hare and White Mailers (collectively the "Mailers"), the Mailers were a joint project of PAUS, NAGR, and RMGO.  RMGO and NAGR staff members, including Defendants O'Dell, Andrew Brown, and Dudley Brown, helped create and/or coordinate the distribution of the Mailers.  Defendants PAUS and RMGO paid for the Mailers.

17.     Defendants' use of the Photograph in the Mailers was not authorized by any Plaintiff: not by Edwards and Privitere, the couple whose likenesses are used, and not by Hill, the photographer who owns a registered copyright in the Photograph.  The Mailers also do not provide a photo credit to Hill.

18.     The use of Edwards' and Privitere's likenesses, individually or as a couple, and the use of the copyrighted Photograph, in the Mailers was wholly gratuitous.  Defendants used the Photograph as a generic stock photo representing marriage by same-sex couples or of two men kissing.  However, stock photos representing these concepts are readily available for licensing from stock photo agencies and other rights holders.  The Defendants used the Photograph instead of licensing one from a stock photo house because it did not wish to pay the customary price.

19.     Defendants' actions constitute unlawful infringement of Hill's copyrighted photograph.

20.     Defendant PAUS and Defendant RMGO's actions constitute unlawful appropriation of Edwards' and Privitere's personalities and likenesses.

**JURISDICTION AND VENUE**

21.     This Court has subject matter jurisdiction over Plaintiff Hill's copyright claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), and over the remaining claims under 28 U.S.C. § 1367(a).

22.     The Court has jurisdiction to declare the rights of the parties and to award any further necessary and proper relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

24.     Personal jurisdiction over Defendants exists because Defendants intentionally targeted the acts at issue in this case at Colorado.

**PARTIES**

25.     Plaintiff Kristina Hill is a professional photographer who lives and works in Brooklyn, New York, and is the sole proprietor of Kristina Hill Photography.

26.     Plaintiffs Brian Edwards and Tom Privitere are residents of West Orange, New Jersey, who married in a civil ceremony in Connecticut in 2010.

27.     Defendant Public Advocate of the United States is a Washington, D.C. corporation with its principal place of business in Falls Church, Virginia.  PAUS is a 501(c)(4) organization which, according to its website, offers strong and vocal opposition to "the furtherance of so-called 'Gay Rights.'"  PAUS may be served with process through its president, Eugene Delgaudio, at Public Advocate of the United States, 5613 Leesburg Pike, Falls Church, VA 22041.

28.     On information and belief, Defendant National Association for Gun Rights is a Virginia corporation with its principal place of business in Windsor, Colorado. NAGR is a 501(c)(4) organization which opposes gun control on the basis that gun control violates the Second Amendment of the United States Constitution. NAGR promotes an armed citizenry utilizing concealed firearms, and offers its members opportunities to enter sweepstakes offering monetary rewards to be redeemed for the purchase of ammunition, and on other occasions, firearms. NAGR may be served with process through its registered agent Dave A. Warrington, 101 Washington Street, Falmouth, VA 22405, or at its offices at 501 Main Street, Suite 200, Windsor, Colorado 80550.

29.     On information and belief, Defendant Rocky Mountain Gun Owners is a Colorado corporation with its principal place of business in Windsor, Colorado. RMGO was incorporated as a 501(c)(4), but the IRS has revoked the organization's non-profit status due to its failure to file required tax forms for three consecutive years. Like Defendant NAGR, RMGO opposes gun control measures, but focuses its efforts specifically to the state of Colorado at both the state and local levels. RMGO may be served with process through its registered agent, Defendant Dudley Brown, at 501 Main Street, Suite 200, Windsor, CO 80550.

30.     On information and belief, Defendant Dudley Brown is the Founder and Executive Director of Defendant RMGO, and Executive Vice President of Defendant NAGR. Besides his political activities as an agent of RMGO and NAGR, Dudley Brown has a long history in Colorado politics as a former lobbyist. On information and belief Dudley Brown resides in Windsor, Colorado, and may be served at 501 Main Street, Suite 200, Windsor, Colorado 80550, at the office of NAGR.

31.     On information and belief, Defendant Lucius O'Dell is the Director of Operations at NAGR.  On information and belief O'Dell resides in Johnstown, Colorado, and may be served at 501 Main Street, Suite 200, Windsor, Colorado 80550, at the office of NAGR.

32.     On information and belief, Defendant Andrew Brown works in the Creative Department of NAGR, resides in Fort Collins, Colorado, and may be served at 501 Main Street, Suite 200, Windsor, Colorado 80550, at the office of NAGR.

## FACTS GIVING RISE TO THIS ACTION

33.     Edwards and Privitere first met during the summer of 2000 while they were both working at a restaurant in New York City.  Edwards was a college student pursuing his bachelor's degree at the time, while Privitere was an actor.  Edwards remembers noticing Privitere's terrific sense of humor; Privitere recalls being intrigued by Edwards' North Carolina roots.  They began socializing as part of a group of friends after they first met, but by May of 2001, they decided to start "going steady."

34.     Edwards and Privitere began living together as a couple sometime during 2002. They met each other's families and friends, and in March of 2009, they joined together in a domestic partnership at City Hall in New York City.

35.     On December 7, 2009, Privitere got down on one knee—in front of a roomful of their friends and family—and proposed marriage to Edwards, who said "yes."

36.     In January of 2010, Edwards and Privitere started their own blog to celebrate their engagement and upcoming marriage.  On their blog, Edwards and Privitere posted logistical information about their ceremony, anecdotes to chronicle their planning process, and photos to commemorate their engagement.  Their blog was an easy and meaningful way to share details of

their engagement and upcoming wedding celebration with their friends and family who lived around the country—in Rochester, San Francisco, North Carolina, and elsewhere.

37. In May of 2010, Privitere and Edwards hired Hill and her company Kristina Hill Photography to take pictures of them to commemorate their engagement. The Photograph was taken by Hill on May 23, 2010, as part of Edwards' and Privitere's engagement photo shoot.

38. The Photograph is a copyrightable work of creative expression.

39. Hill directed Edwards and Privitere into the pose in which they appear in the Photograph, kissing but standing apart, holding both hands. Hill chose this pose because the separation between Edwards and Privitere makes the kiss exaggerated, lending an air of playfulness to the Photograph. In other words, by directing Edwards and Privitere into their pose, Hill made creative contributions to the subject of the Photograph.

40. Hill chose the timing of the Photograph as well, choosing to press the shutter a moment into the kiss, with the couple's noses touching, faces scrunched.

41. Hill chose the camera angle, shooting at a slight angle to Edwards and Privitere, so as to highlight both the space between their bodies and their facial expressions. Hill also chose the focal length of the lens (50mm), the aperture (f/11), and the shutter speed to achieve her desired effect. Hill positioned the couple and herself to achieve the desired lighting. Hill shot the photograph in color, but later decided to change it to black and white. In other words, some of Hill's creative choices dealt with the rendition of the subject—not what was depicted, but how it was depicted.

42.     Privitere and Edwards wanted to share certain of Hill's photographs with their friends and family, so with her permission they posted some of them, including the Photograph, on their blog.

43.     Privitere and Edwards were married in a civil ceremony on September 7, 2010. On October 17, 2010, they celebrated their marriage with approximately twenty-five friends and family members at a ceremony in Puerto Vallarta, Mexico.

44.     Almost two years after their marriage, around June 27, 2012, Edwards and Privitere learned that the Photograph had been used by PAUS in the White Mailer and the Hare Mailer. Edwards had been contacted by a friend who had seen the White Mailer in a *New York Daily News* print article about Senator White's opponent in the Republican primary, and recognized Edwards and Privitere as the gay couple in the White Mailer.

45.     Hill also learned of the infringement on June 27, 2012, after speaking with Edwards.

46.     Soon after, Plaintiffs realized that the Photograph had also been used in the Hare Mailer. Since Plaintiffs had not authorized use of the Photograph and had no ties to Colorado, they were shocked to discover the incorporation of their images in the Hare and White Mailers.

47.     Based on the Mailers' listing of PAUS as the sender, in July 2012, Plaintiffs attempted to receive assurance from PAUS that it would cease and desist from the unauthorized use of the Photograph and of Plaintiffs Edwards' and Privitere's likenesses. *See* Letter from Christine Sun to Eugene Delgaudio, dated July 11, 2012, attached hereto as Exhibit A.

48.     Despite statements from Eugene Delgaudio ("Delgaudio"), President of PAUS, regarding its use of the Photograph and later, the Plaintiffs' cease and desist letter, PAUS failed

11

to respond to Plaintiffs' request that it cease from further use of the Photograph. On September 26, 2012, Plaintiffs filed this litigation. *See* Dkt. 1.

49. The discovery Plaintiffs received after filing the Complaint revealed an unexpected alliance between the anti-gay group PAUS, based in Virginia, and the pro-gun groups, NAGR and RMGO, based in Colorado.

50. RMGO, NAGR, and PAUS were brought together by a mutual acquaintance, Michael Rothfeld ("Rothfeld") of Saber Communications, in April 2012. At the time, PAUS was seeking to insert itself into the campaigns of the Colorado-state Republican primaries to help defeat candidates who expressed support of civil union legislation. Around the same time, Dudley Brown reached out to Rothfeld to inquire whether he thought PAUS would sponsor mailings targeting then-Senator Jean White and Jeffrey Hare, candidates in the Colorado Republican primaries. *See* Email from Dudley Brown to Rothfeld dated April 24, 2012, attached hereto as Exhibit B.

51. For RMGO, the mailings were to be a part of larger campaigns it was orchestrating against the candidates. By the time Dudley Brown reached out to Rothfeld, RMGO had already sent out at least one political attack letter (of what would be several) against Senator White, and the RMGO Political Action Committee had already donated at least $2,000 to the campaign of Jeffrey Hare's opponent.

52. At the end of April, with Rothfeld's assistance, Dudley Brown sent an email to Delgaudio proposing that PAUS become involved in the two campaigns against Senator White and candidate Hare. The proposal stated, "[t]he gay lobby smells blood in the water, and if some pro-gay legislators don't lose their primaries, I fear Colorado will tumble [i.e., pass legislation

12

authorizing civil unions] in the 2013 session . . . What I propose is that PA pay for mailing . . .

My staff and I would do all the work, but we'd want PA to sign off, put its name on the dotted

line, and pay for the mailings. I would counsel mailing slick and glossies, with the 'two men

kissing' photo." *See* Email from Dudley Brown to Rothfeld and Delgaudio dated April 26, 2012,

attached hereto as Exhibit C.

      53.     In response, Delgaudio sent an email approving Dudley Brown's proposal

indicating that he agreed that the Mailers should use a photo of two gay men kissing, and

approving PAUS's funding of the Mailers. The agreement called for Dudley Brown and his staff

to create the Mailers, with PAUS having final approval over their content.

      54.     Soon after securing PAUS's approval, Defendant Dudley Brown set out to ensure

the creation, printing, and distribution of the Mailers. Defendant Dudley Brown reached out to

his staff—specifically, Defendant O'Dell at NAGR—and stated: "Giddy up. Let's design the

mailing slick. You want to talk with Drew [Defendant Andrew Brown] about it?" *See* Email

from Dudley Brown to O'Dell dated April 26, 2012, attached hereto as Exhibit D.

      55.     In response, Defendant O'Dell circulated initial drafts of the Mailers to Dudley

Brown. In O'Dell's description of the Mailers to Dudley Brown, he noted that "[i]mages are

EVERYTHING for this piece" and later explained that the picture side of the postcards would

have an image of "two flamboyantly gay men embracing, in a romantic manner." *See* Email

from O'Dell to Dudley Brown dated April 30, 2012, attached hereto as Exhibit E.

      56.     Defendants O'Dell and Dudley Brown then proceeded to exchange several emails

about O'Dell's suggested text for the Mailers. *See id.*

57.     Once the text of the Mailers was agreed upon, O'Dell instructed Defendant Andrew Brown in the Creative Department at NAGR to work on the visuals for the Mailers, stating "I need you to work on a slick [the Mailers] for me . . . We're copying a piece we call the 'Kissing Piece.'"  In his email to Andrew Brown, O'Dell provided the location on the internal shared computer network of NAGR to the "Kissing Piece" from which the Mailers were modeled, and drafts of the Mailers.  O'Dell stressed the importance of Andrew Brown's design to the Mailers, stating "[t]his piece is all about the visuals."  In response, Zach Lautenschlager, another representative of NAGR also included on O'Dell's email, expressed his preference for a particular model for the Mailers.  *See* Email from Lautenschlager to O'Dell dated May 1, 2012, attached hereto as Exhibit F.

58.     Defendants Andrew Brown and O'Dell then proceeded to exchange various emails regarding the finalization of the Mailers including the Mailers' text and visuals.

59.     In addition to drafting and supervising the design of the Mailers, Defendant O'Dell also oversaw the work of staff within NAGR, including Derek Granquist, who researched potential recipients of the Mailers.

60.     Defendant O'Dell coordinated the logistics of printing and distributing the Mailers with Spectrum Marketing Companies, Inc. ("Spectrum") in New Hampshire, a company that O'Dell recommended to PAUS.

61.     Within two weeks, Dudley Brown had versions of the Mailers created by staff, which he then forwarded to Delgaudio for PAUS's review. *See* Email from Dudley Brown to Rothfeld, O'Dell, and Delgaudio dated May 7, 2012, attached hereto as Exhibit G.[2]

62.     Based on his review, Delgaudio provided final approval to Dudley Brown for the Mailers to be sent out under PAUS's name. At the time he reviewed the Mailers, Delgaudio believed, based on representations made by Defendant O'Dell and the fact that the background appeared to be set in Colorado, that the couple in the photograph (Edwards and Privitere) were a gay couple from Colorado or had some connection to Colorado. It was on that basis that PAUS approved the use of the Photograph in the Mailers because it was important to the message of the Mailers that the couple in the photo had some connection to Colorado.

63.     Defendant O'Dell thereafter coordinated the final details of the mass printing and shipment of the Mailers with Spectrum and PAUS.

64.     PAUS issued checks totaling $3,167.14 to pay for Spectrum's work on the Mailers, and RMGO paid $375.00 to cover additional costs charged by Spectrum for the Mailers.

65.     All of the email exchanges to and from Defendants Dudley Brown, Andrew Brown, and O'Dell described above were conducted using their NAGR or RMGO email accounts and included their respective organizational titles.

66.     The White Mailer was prepared, reproduced, and distributed by Defendants.

67.     The Hare Mailer was prepared, reproduced, and distributed by Defendants.

---

[2]     Defendant PAUS originally marked this email as "Confidential" pursuant to the parties' Protective Order, to which Plaintiffs objected. In any event, PAUS waived its confidentiality designation over this email and others when PAUS failed to file the appropriate motion to restrict access. *See* Order, Dkt. 62.

68. Defendant RMGO and Defendant PAUS did not secure, or attempt to secure, Plaintiff Edwards' or Plaintiff Privitere's permission to use or manipulate their likenesses or images.

69. Defendants did not secure, or attempt to secure, authorization from Plaintiff Hill to use or manipulate her copyrighted photograph.

70. After learning of the theft of the Photograph, Edwards wrote on his blog: "[The photo] represents my long term relationship with my best friend, my partner, and now husband— the love we share and obstacles we have overcome. It is a reminder of the happiness I felt the day he proposed to me and of the excitement I had throughout our engagement. It represents hope and it represents love. Or at least it did . . . Now I see it faded and brown with a big red, blood-emulating slash across our bodies. It cuts us in half just below our hearts. How do I feel? I'm in shock and I'm angry and I'm hurt and I'm flabbergasted and I'm livid."

71. Hill wrote on her blog: "Brian, a client and good friend, called me last night to share his discovery that one of the images I had taken during their engagement session had been stolen, digitally manipulated and reproduced in a campaign targeting a senator for her vote in support of a bill allowing same-sex couples to form civil unions. When I heard this, a range of emotions flooded through me. When I actually saw the image, my heart dropped . . . . It fuels me as a photographer to know that these images will be cherished. That they will hang on walls, be passed around at gatherings, put in albums, and that someday maybe children and grandchildren will display these moments in their own homes. To see an image, taken with that intent being used in the way it was used is heart-breaking for me."

16

## COUNT I: COPYRIGHT INFRINGEMENT
(Plaintiff Hill Against Defendants PAUS, RMGO, NAGR, O'Dell, Dudley Brown, and Andrew Brown)

72.　　Plaintiff Hill re-alleges and incorporates by reference all of the preceding paragraphs in this First Amended Complaint.

73.　　Plaintiff Hill holds a valid copyright in the Photograph. Hill's copyright in the Photograph has been duly and lawfully registered with the United States Copyright Office under Registration Number VA 1-827-483.

74.　　Hill has not granted Defendants a license to use the Photograph.

75.　　Defendants infringed Hill's exclusive right granted by 17 U.S.C. § 106(1) by reproducing the Photograph in copies.

76.　　Defendants infringed Hill's exclusive right set granted by 17 U.S.C. § 106(2) by preparing a derivative work based upon the Photograph.

77.　　Defendants infringed Hill's exclusive right set granted by 17 U.S.C. § 106(3) by distributing copies of the Photograph to the public, unsolicited, through the mails.

78.　　As a result of Defendants' infringement, Hill has suffered actual damages, in the form, for example, of lost license fees.

79.　　Accordingly, Hill is entitled to declaratory relief, actual damages, and infringer's profits.

## COUNT II: APPROPRIATION OF PERSONALITY OR LIKENESS
(State Law Tort Claim by Plaintiffs Edwards and Privitere Against Defendants RMGO and PAUS)

80.　　Plaintiffs Edwards and Privitere re-allege and incorporate by reference all of the preceding paragraphs in this First Amended Complaint.

81.     The message promoted in the Mailers—that Edwards and Privitere, or any other same-sex couple for that matter, do not constitute a family—is entirely antithetical to Edwards' and Privitere's core beliefs and sense of self.

82.     Edwards and Privitere were and are distressed about the likelihood that their images were seen by gay and lesbian youth in Colorado who would feel ashamed of their sexual orientation because of the Mailers.

83.     Edwards and Privitere were and are distressed at the prospect that parents of gay and lesbian children in Colorado may have received one of the Mailers and, upon reading it, think less of their own children and of same-sex couples generally.

84.     Edwards and Privitere were and are outraged that their likenesses have been used to promote an agenda which directly harms families like theirs.

85.     Edwards and Privitere have been targets of hate messages by people who have seen their likenesses on the Mailers.  People have posted on the internet that Edwards and Privitere deserve to go to hell, that they deserve to be killed, and that any children they may have would be better off dead.

86.     Edwards and Privitere have feared for their safety as a direct and proximate result of the actions taken by Defendants RMGO and PAUS.

87.     Defendants RMGO and PAUS have unlawfully appropriated the likenesses and personalities of Edwards and Privitere for the purpose of promoting their own agendas.  As a direct and proximate result of Defendants' appropriation of their likenesses and personalities, Edwards and Privitere have suffered mental distress and anguish, and proprietary, dignitary, and reputational harm.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs respectfully pray for the following relief:

A.      The entry of declaratory judgment that Defendants unlawfully infringed Plaintiff Hill's copyright in the Photograph;

B.      That Defendants be found to have willfully infringed Hill's rights in the Photograph under 17 U.S.C. § 501;

C.      That Defendants be directed to pay to Hill money damages and profits in accordance with 17 U.S.C. § 504;

D.      The entry of declaratory judgment that Defendants PAUS's and RMGO's actions against Plaintiffs Privitere and Edwards were unlawful;

E.      That Edwards and Privitere be awarded compensatory damages in an amount to be determined at trial to compensate them for the dignitary, reputational, proprietary, and mental harms that they have suffered as a result of Defendants PAUS's and RMGO's conduct alleged herein;

F.      That Defendants pay Plaintiffs' reasonable attorneys' fees, costs, and expenses incurred in connection with this action;

G.      That Plaintiffs be awarded prejudgment interest on any monetary award made part of the judgment against Defendants; and

H.      That Plaintiffs be awarded such additional and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs Kristina Hill, Brian Edwards and Thomas Privitere, pursuant to Fed. R. Civ. P. 38, hereby demand trial by jury on all issues so triable in this matter.

DATED:     April 3, 2013

Respectfully submitted,

*s/ Christine P. Sun*
Christine P. Sun
Anjali J. Nair
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
Telephone:  334-956-8256
christine.sun@splcenter.org
anjali.nair@splcenter.org

Daniel D. Williams
Christopher L. Larson
Kathryn A. Feiereisel
FAEGRE BAKER DANIELS LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203-4532
Telephone:  303-607-3500
dan.williams@FaegreBD.com
christopher.larson@FaegreBD.com
katie.feiereisel@FaegreBD.com

Daralyn J. Durie
Joseph C. Gratz
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, California 94111
Telephone:  415-362-6666
ddurie@durietangri.com
jgratz@durietangri.com

*Attorneys for Plaintiffs KRISTINA HILL,*
*BRIAN EDWARDS, and THOMAS*
*PRIVITERE*
