# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

- - - - - - - - - - - - - - - - - - x
KRISTINA HILL, :
BRIAN EDWARDS, and :
THOMAS PRIVITERE, :
:
Plaintiffs, : Civil Action No.
: 1:12-cv-02550-WYD-KMT
v. :
:
PUBLIC ADVOCATE OF THE :
UNITED STATES, :
:
Defendant. :
:
- - - - - - - - - - - - - - - - - - x

Monday, March 18, 2013

Manassas, Virginia

Deposition of

EUGENE DELGAUDIO

a witness, called for examination by counsel for the plaintiffs, pursuant to notice, held at the offices of Vanderpool, Frostick & Nishanian, P.C., 9200 Church Street, Suite 400, Manassas, Virginia, beginning at 10:25 a.m., before Frances M. Freeman, a Notary Public in and for the Commonwealth of Virginia, when were present on behalf of the respective parties:

APPEARANCES:

For the Plaintiffs:

CHRISTINE P. SUN, ESQUIRE
ANJALI J. NAIR, ESQUIRE
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama 36104
334/956-8256

For the Defendant:

CHRISTOPHER M. COLLINS, ESQUIRE
Vanderpool, Frostick & Nishanian, P.C.
9200 Church Street
Suite 400
Manassas, Virginia 20110
703/369-4738

Also Present:

DAVID VOIGTSBERGER, Videographer

A Yes.

Q What are those?

A My wife pays me compliments. They are treasures. My children to the degree that they bring me honor reward me. God gives me some breath each day for which I am grateful, and gives me food, and I thank him for each meal. And the people of Sterling have put me on the board of supervisors, and, that, I receive $40,000 each year.

Q Any other positions in which you receive monetary compensation?

A No.

Q Prior to this case, had you ever heard of Kristina Hill, Brian Edwards or Tom Privitere?

A (Shaking head negatively).

Q Could you please answer with a word?

A No.

Q Thank you.

Did you have any idea who they were prior to this case?

MR. COLLINS: Objection. Asked and answered.

THE WITNESS: No.

BY MS. SUN:

Q When did you first learn of their names?

A With this case.

Q When in this case?

A I'm trying to remember.

MR. COLLINS: If I may interject --

THE WITNESS: My attorney would know.

MR. COLLINS: Yeah. Let me interject. I know there is a question pending, but if you have something you want to show Mr. Delgaudio to refresh his recollection, that might speed things up.

THE WITNESS: My attorney -- let's see. My attorney would know when I first learned because I think I retained you.

I don't remember.

MR. COLLINS: I can't testify in the case.

THE WITNESS: Oh. I cannot remember.

MR. COLLINS: Ms. Sun is going to --

THE WITNESS: When I retained my attorney.

BY MS. SUN:

photograph published by an advocacy group that has actually promoted the position of same sex marriage.

And these are available in large numbers on the internet that I have described.

Q Right. Right. So there are many, many photos of same sex couples that are publicly available?

A Yes.

Q So it didn't really matter which photo was used in these mailers?

A That is correct.

Q As long as it was a picture of same sex couples kissing?

A I believe I have used a photograph of two guys hugging each other from behind, and we don't know who they are.

Q Sorry. I didn't mean specifically kissing. Maybe a same sex couple engaged in some sort of affection.

A We have also, I believe, used photographs of two hands, you know, one being a man and one being,

you know, two men. And we try to look at that that way. I mean, so we try to -- you know, a wedding ring, with just a picture of a wedding ring, you know. So it's not just a guy -- two guys kissing.

Q So there are many different ways that Public Advocate could have expressed opposition to same sex marriage or to civil unions in the mailers?

A Yes.

Q And it didn't have to be a photo of two men kissing?

A Well, again, I guess the question is: Did we need this photograph?

Q Right.

A We needed a photograph like this.

Q You didn't need a photograph of these particular gay men?

A No.

Q And you didn't need a photograph taken by this particular photographer?

A No.

Q And when I say, You didn't need such a photo,

you didn't need the photo to express the message that you were trying to put out there to the voters in this Colorado district?

A We didn't need did this particular photograph in this particular district.

Q Back to Dudley Brown. When did you first become acquainted with him?

A I asked Michael Rothfeld if he knew anyone in Colorado. And he said, Dudley Brown. And I said, Can I have his phone number. And that was it.

Q Was that the first time that you had heard of Mr. Brown or met Mr. Brown?

MR. COLLINS: Objection. Form.

BY MS. SUN:

Q I -- or spoken to Mr. Brown? I'm just trying to get a sense of when is the first time you --

MR. COLLINS: I will let the question go. Just form.

THE WITNESS: This is the first time.

BY MS. SUN:

Q When approximately was this?

A Yes.

Q And it was important for you that the couple have some connection to Colorado in order to best express the message of the mailers?

A Yes. This is a local mailing for a local race. And I'm from New York, and if I wanted a New York couple, I could find my own New York couple that was by my standards or a San -- if it was going to be a race for Congress or a race for U.S. Senator or a race for President, but this is a local Colorado race and it needed to be Colorado people.

From my perspective -- again, what their perspective is these are the Colorado people, I want a Colorado flyer. I want a Colorado document.

Q You were relying on Mr. O'Dell to find you a Colorado couple for this flyer?

A Yes.

MS. SUN: Let's mark this as Exhibit 12.

(Thereupon, Deposition Exhibit No. 12 was marked for identification.)

THE WITNESS: Yes.

And so in this case, they are not in Colorado. And they are not with -- you know, they are in Manhattan. So I felt kind of -- this is a political site. Advocacy, soft advocacy, but it's not the hard standard that I would have wanted.

BY MS. SUN:

Q Right. In fact, if folks knew or recipients of the mailers knew that the couple weren't even from Colorado and they were from New York City, that would have detracted from the message of the mailer. Correct?

A Yes. That is correct. Yes.

Q And so by Public Advocate's standards, the photo did not, in fact, come from a publicly-available source?

MR. COLLINS: Objection. That is not the testimony that's been given so far.

MS. SUN: Okay. If it's not, I am confused because --

MR. COLLINS: If you want to ask the question --