UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-02550-WYD-KMT

KRISTINA HILL;
BRIAN EDWARDS; and,
THOMAS PRIVITERE,

      Plaintiffs,

v.

PUBLIC ADVOCATE OF THE UNITED STATES;
NATIONAL ASSOCIATION FOR GUN RIGHTS;
ROCKY MOUNTAIN GUN OWNERS;
LUCIUS O'DELL;
ANDREW BROWN; and,
DUDLEY BROWN,

      Defendants.

---

## ORDER

---

THIS MATTER is before the Court on defendant, Public Advocate of the United States' Motion To Dismiss Plaintiffs' First Amended Complaint [ECF No. 101] and defendants, National Association for Gun Rights, Rocky Mountain Gun Owners, Lucius O'Dell, Andrew Brown, and Dudley Brown's Motion To Dismiss The First Amended Complaint [ECF No. 106].  For the reasons stated below, the motions are GRANTED IN PART and DENIED IN PART.

### BACKGROUND

On May 29, 2013, plaintiffs, Kristina Hill, Brian Edwards, and Thomas Privitere (collectively "the Plaintiffs") filed their First Amended Complaint [ECF No. 92] asserting a copyright infringement claim pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*,

- 1 -

against defendants, Public Advocate of the United States ("Public Advocate"), National Association for Gun Rights ("NAGR"), Rocky Mountain Gun Owners ("Rocky Mountain"), Lucius O'Dell, Andrew Brown, and Dudley Brown (collectively "the Defendants"), and asserting a Colorado state law appropriation of name or likeness tort claim against Public Advocate and Rocky Mountain.

Edwards and Privitere are a homosexual, married couple living in West Orange, New Jersey.  Hill is Edwards' college friend and a professional wedding photographer. Edwards and Privitere became engaged on December 7, 2009, and were married in a civil ceremony on October 17, 2010.  In January 2010, they started a blog to celebrate their engagement and disseminate information regarding their upcoming marriage.  In May 2010, Edwards and Privitere hired Hill to take engagement photos.  One engagement photo depicts Edwards and Privitere holding hands and kissing each other on the lips in a park next to the East River in New York City ("the photo"). ECF No. 92, p. 3.  Edwards and Privitere are in the foreground and in the background the viewer can see the historic Brooklyn Bridge and skyscrapers in downtown/lower Manhattan, New York City, New York.   With Hill's permission, Edwards and Privitere posted the photo on their blog.

Public Advocate opposes "[s]ame sex marriage and the furtherance of so called 'Gay Rights.'" *See, About Us*, http://www.publicadvocateusa.org/about/.  In the Spring of 2012, approximately 3,000 Colorado residents received a political advertisement in which the portion of the photo depicting Edwards and Privitere kissing was superimposed on a mailer with snow-covered pine trees in the background and a caption reading, "State Senator Jean White's Idea Of 'Family Values?'" ECF No. 92, p.

4.  The mailer refers to Jean White, Republican State Senator for Colorado's 8th

District.  At the time the mailer was issued, White was in a primary race against another

Republican for the 8th District's Senate seat and White had supported a bill that would

allow same-sex couples to enter into civil unions.  On the back of the mailer, Public

Advocate is listed as the sender and the mailer includes Public Advocate's physical

address and web address.  Around that same time, approximately 4,400 Colorado

residents received a different political advertisement in which the same portion of the

photo depicting Edwards and Privitere kissing was superimposed on a mailer with white

clouds in the background and a caption reading, "Jeffrey Hare's Vision For Weld

County?" ECF No. 92, p. 5.  The mailer refers to Jeffrey Hare, who at the time was a

Republican candidate for Colorado's House District 48 seat and supported same-sex

marriage.  As with the mailer regarding Senator Jean White, Public Advocate is listed as

the sender and the mailer includes Public Advocate's physical address and web

address.

The Plaintiffs allege that while both mailers only list Public Advocate as the

sender, the mailers were a joint project between Public Advocate, NAGR, and Rocky

Mountain.  The Plaintiffs allege that Dudley Brown, Rocky Mountain's Executive Director

and NAGR's Executive Vice President, O'Dell, NAGR's Director of Operations, and

Andrew Brown, a member of NAGR's Creative Department, created the mailers and

coordinated their distribution.  The Plaintiffs further allege that:  (1) Hill owns a

registered copyright for the photo; (2) the Defendants neither requested nor received

authorization to use the photo; and, (3) the mailers do not provide a photo credit to Hill.

The Plaintiffs argue that the Defendants' actions constitute copyright infringement and

unlawful appropriation of Edwards and Privitere's name and likeness.

On June 26, 2013, Public Advocate filed a Motion To Dismiss [ECF No. 101] arguing that: (1) the Free Speech Clause of the First Amendment to the Constitution of the United States bars the Plaintiffs' appropriation of name or likeness tort claim; and, (2) the fair use doctrine bars the Plaintiffs' copyright infringement claim. On July 26, 2013, Andrew and Dudley Brown, NAGR, O'Dell, and Rocky Mountain filed a Motion To Dismiss First Amended Complaint [ECF No. 107] presenting similar arguments and also stating that New Jersey law governs the Plaintiffs' appropriation of name or likeness tort claim.

## ANALYSIS

### A. Legal Standard for a Motion to Dismiss Pursuant to FEDERAL RULE of CIVIL PROCEDURE 12(b)(6)

FED. R. CIV. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complain alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*. 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2007).

In ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), I "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344,

1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997) (citations omitted). The plaintiff "must 'nudge [][his] claims across the line from conceivable to plausible.'" *Dennis v. Watco Co., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U,S, 544, 570 (2007)). Conclusory allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009); *see also Twombly*, 550 U.S. at 546 (2007) (The plaintiff's burden "requires more than labels and conclusion, and a formulaic recitation of the elements of the cause of action will not do"). General allegations "encompass[ing] a wide swath of conduct, much of it innocent" will fail to state a claim. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

**B.   Plaintiffs' Appropriation of Name or Likeness Tort Claim**

The Plaintiffs assert this claim against Public Advocate and Rocky Mountain. Plaintiffs asserted this claim pursuant to Colorado law and Public Advocate couched its opposition to this claim under Colorado law.  However, Rocky Mountain argues that New Jersey tort law governs this claim.  Because there is dispute as to whether Colorado or New Jersey law applies, it is necessary to undergo a choice of law analysis.

**1.  Choice of Law**

This Court has federal question subject matter jurisdiction over the Plaintiffs' copyright infringement claim under the Copyright Act because it arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  This Court has supplemental subject matter jurisdiction over the Plaintiffs' state law appropriation of name or likeness tort claim because it is "so related" to the copyright infringement claim "that they form part of the same case or controversy . . . " 28 U.S.C. § 1367(a).  When a federal district court exercises supplemental subject matter jurisdiction over a state law

claim, it applies the choice of law rules of the forum state. *Bancoklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (citing *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996)).

The Colorado Supreme Court has stated that the choice of law standard used to determine what state law applies in a multi-state tort action is "the most significant relationship to the occurrence and parties test expressed in Restatement (Second) of the Conflicts of Laws §§ 145, 171 (1971)."[1] *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007) (en banc).   Pursuant to § 145, a court takes into consideration the following factors when determining what state law applies:  (1) the place of injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and, (4) the place where the relationship, if any, between the parties is centered. *AE, Inc.*, 168 P.3d at 510.

### a.  Place of Injury

The Plaintiffs admit that they were injured in New Jersey. ECF No. 109, p. 10, ¶ 4.  However, the Plaintiffs state that in this specific context, the fact that they were injured in New Jersey is not dispositive.  The Plaintiffs rely on *Elvig v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207 (D. Colo. Mar. 8, 2010), for the proposition that when the place of injury "is simply fortuitous, having little relation to the occurrence and the parties with respect to the particular issue, the place of injury is not accorded significance." ECF No. 109, p. 10, ¶ 4 (internal quotation marks omitted) (quoting *Elvig*, 696 F. Supp. 2d at 1210-11).  *Elvig* did not involve a privacy tort, as is the case here.

---

[1] Section 145 is used to determine the applicable state law and § 171 is used to determine the measure of damages.

Because the place of injury regarding privacy torts is not always clearly ascertainable in comparison to other torts, I do not find the statement cited to in *Elvig* dispositive.

It is undisputed that Edwards and Privitere suffered injury in New Jersey. However, Edwards and Privitere also suffered injury in Colorado, the place where approximately 7,400 mailers were distributed.  The mere fact that Edwards and Privitere were not physically present in Colorado during the distribution of mailers does not automatically preclude a finding that they suffered injury in Colorado.  It is counterintuitive to state that Edwards and Privitere did not suffer injury in Colorado when approximately 7,400 Colorado residents received mailers mocking Edwards and Privitere's sexual preference in an attempt to influence state elections.  Thus, I find that Edwards and Privitere sustained injury in both Colorado and New Jersey and this factor is neutral.

### b.  Place Where the Conduct Causing the Injury Occurred

Taking the allegations in the First Amended Complaint [ECF No. 92] as true, as I must at this stage of the proceedings, Andrew Brown, Dudley Brown, and O'Dell played a significant role in preparing the mailers and all are alleged to reside in Colorado. *See* ECF No. 92, p. 8, ¶ 30 and p. 9, ¶¶ 31-32.  Spectrum Marketing Companies, Inc. ("Spectrum"), a New Hampshire company, also played a role in preparing the mailers as the Plaintiffs alleged that "O'Dell coordinated the logistics of printing and distributing the Mailers with Spectrum . . . " *Id.* at p. 14, ¶ 60.  Thus, I find that the conduct causing the injury occurred in Colorado and New Hampshire.  Because the choice of law dispute is between Colorado and New Jersey and because no conduct causing the injury occurred in New Jersey, this factor favors application of Colorado state tort law.

### c. Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties

According the Plaintiffs' allegations:  (1) Edwards and Privitere are New Jersey residents; (2) Public Advocate is a Washington, D.C. corporation with its principal place of business in Virginia; and, (3) Rocky Mountain is Colorado corporation with its principal place of business in Colorado.  This factor is neutral.

### d. Place Where the Relationship, If Any, Between the Parties is Centered

The only relationship between Edwards and Privitere and Public Advocate and Rocky Mountain is that Edwards and Privitere are victims of the alleged tort.  Thus, this factor is neutral.

### e. Conclusion

Based on my analysis of the factors stated in RESTATEMENT (Second) of the CONFLICTS of LAWS § 145, I find that Colorado has the most significant relationship to the occurrence and parties.  Edwards and Privitere sustained injury in Colorado and significant acts in preparing the mailers occurred in Colorado via Andrew Brown, Dudley Brown, and O'Dell.  The only relationship New Jersey has with this action is that Edwards and Privitere reside there and sustained injury there.  Thus, Colorado has the most significant relationship to the occurrence and the parties and Colorado state tort law will apply.[2]

---

[2] The Plaintiffs present an argument for application of Colorado state tort law based on § 152 of the RESTATEMENT.  I need not address this argument and express no opinion as to its merits because I find that pursuant to my § 145 analysis, Colorado has the most significant relationship to the occurrence and parties.

## 2.  The Tort

In order to prevail on a Colorado state law tort claim for appropriation of name or likeness, a plaintiff must establish:  "(1) the defendant used the plaintiff's name or likeness; (2) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise; (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred."  *Joe Dickerson & Assocs., L.L.C. v. Dittmar*, 34 P.3d 995, 997 (Colo. 2001).  A plaintiff will not prevail on this claim if a "defendant's use of the plaintiff's name and likeness is privileged under the First Amendment."  *Id.*  Whether a defendant's use of a plaintiff's name or likeness is privileged under the First Amendment is a question of law.  *Id.* at 1003.

### a.  Whether the Defendants' Use of the Plaintiffs' Name or Likeness is Privileged Under the First Amendment

Public Advocate and Rocky Mountain argue that the First Amendment's Free Speech Clause bars the Plaintiffs' tort claim.

The First Amendment's Free Speech Clause states that "Congress shall make no law . . . abridging the freedom of speech . . ." U.S. Const. amend. I.  The Supreme Court of the United States has held that the Free Speech Clause "can serve as a defense in state tort suits . . ." *Snyder v. Phelps*, 131 S. Ct. 1207, 1215 (2011) (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988)).  Regarding a First Amendment defense in the context of an appropriation of name or likeness tort claim, the Colorado Supreme Court has stated that, "there is a First Amendment privilege that permits the use of a plaintiff's name or likeness when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern." *Joe Dickerson & Assocs., L.L.C.*, 34 P.3d at 1003 (citations

omitted).  "In many situations, however, it is not altogether clear whether a particular use of person's name or likeness is made for the purpose of communicating news or for the purpose of marketing a product or service." *Id.*  "To resolve this question, courts must determine whether the character of the publication is primarily noncommercial, in which case the privilege will apply, or primarily commercial, in which case the privilege will not apply." *Id.* (citing *Tellado v. Time-Life Books, Inc.*, 643 F. Supp. 904, 909-10 (D. N.J. Sept. 3, 1986)).

Pursuant to the Colorado Supreme Court's pronouncement in *Joe Dickerson & Assocs., L.L.C.*, I must determine two issues:  (1) whether the Defendants' use of the Plaintiffs' name or likeness was primarily commercial or noncommercial; and, (2) whether such use reasonably relates to a publication concerning a matter that is newsworthy or of legitimate public concern.[3]  Because the First Amendment privilege will not apply if the Defendants' use was commercial, I must address that issue first.

### i.  Primarily Commercial or Noncommercial

"Commercial speech is speech that proposes a commercial transaction." *Joe Dickerson & Assocs., L.L.C.*, 34 P.3d at 1004 (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422-23 (1993).  "It is the content of the speech, not the motivation of the speaker, which determines whether particular speech is commercial." *Id.* (citations omitted).

Neither of the mailers proposes a commercial transaction.  The mailers are simply statements of disapproval of certain political candidates.  While Public Advocate

---

[3] In *Joe Dickerson & Assocs., L.L.C.*, the Colorado Supreme Court did not separate these elements, but rather analyzed them in tandem.  Upon close inspection of the Colorado Supreme Court's opinion and the parties' arguments in the present case, I believe it prudent and necessary to analyze these elements individually.

may profit in some tangential way *e.g.*, a Colorado resident who received one of the mailers agrees with Public Advocate's viewpoint regarding same-sex unions and feels moved to donate money to or volunteer for the organization, such a collateral effect is insufficient to conclude that the mailers were used for a primarily commercial purpose.  I find that the mailers were used for a primarily noncommercial purpose and therefore the First Amendment privilege may be asserted.  Whether the privilege bars the Plaintiffs' tort claim depends on whether Public Advocate and Rocky Mountain's use of Edwards and Privitere's name and likeness reasonably relates to a publication concerning a matter that is newsworthy or of legitimate public concern.

### ii. Whether the Use Reasonably Relates to a Publication Concerning a Matter That is Newsworthy or of Legitimate Public Concern

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.

*Snyder*, 131 S. Ct. at 1216 (internal quotation marks and citations omitted).  Same-sex marriage is matter of public concern. *See, e.g., Raymen v. United Senior Ass'n*, 409 F. Supp. 2d 15, 23 (D. D.C. Jan. 20, 2006) (citations omitted) ("Clearly the issues of same-sex marriage and support for the military are issues of public concern and both have been widely discussed in the media").  At the time of the actions giving rise to this suit (Spring 2012), Colorado had not yet passed the Colorado Civil Union Act, COLORADO REVISED STATUTES 14-15-101, *et seq.*, effective May 1, 2013, which grants same-sex couples the legal right to enter into a civil union and enjoy the "rights, protections, duties, obligations, responsibilities, and other incidents under law as are granted to or

imposed upon spouses . . ." C.R.S. 14-15-107(1).  Thus, the mailers were sent for the

sole purpose of negatively impacting pro same-sex union candidates' chances of being

re-elected / elected.  Public Advocate and Rocky Mountain knew that same-sex

marriage is politically charged issue, otherwise they would not have cherry-picked this

issue out of all the issues facing Senator Jean White and candidate Jeffrey Hare.

Public Advocate and Rocky Mountain's actions are evidence that same-sex marriage

can at the very least be considered as relating to political concerns of the community.

Therefore, I find that the mailers reasonably relate to a matter of public concern.

The Plaintiffs present an argument focusing on the phrase "reasonably relate."

They argue that while whether or not Senator Jean White and candidate Jeffrey Ware

get elected is certainly a matter of public concern, *they* are not reasonably related *to*

*that* matter of public concern.  However, whether or not Senator Jean White and

candidate Jeffrey Ware get elected is irrelevant in this discussion.  The speech at issue,

which occurred in the context of a political election, is Public Advocate and Rocky

Mountain's disapproval of same-sex marriage, and the public concern at issue is same-

sex marriage.  The Plaintiffs focus solely on the political election in an attempt to avoid

application of the First Amendment privilege.  The Plaintiffs are splitting hairs.  The test

of whether the First Amendment privilege applies is whether a defendant's use of a

plaintiff's name or likeness reasonably relates to a publication concerning a matter that

is newsworthy or of legitimate public concern.  Public Advocate and Rocky Mountain's

use of the photo reasonably relates to a matter of legitimate public concern:  same-sex

marriage.  The mailers, in which the predominant image is Edwards and Privitere

kissing, were used to voice disapproval of Senator Jean White and candidate Jeffery

Ware's support for same-sex marriage.  Thus, the matter of public concern is same-sex marriage and it cannot be said that the lifted portion of the photo is not reasonably related to same-sex marriage.  Further, the Plaintiffs rely on Magistrate Judge Hegarty's Recommendation in *Bustos v. United States*, 2009 U.S. Dist. LEXIS 80496 (D. Colo. June 26, 2009), to support their argument.  However, in ruling on Magistrate Judge Hegarty's Recommendation, Judge Babcock rejected that portion of the Recommendation relied on by the Plaintiffs. *See Bustos v. United States*, 2009 U.S. Dist. LEXIS 74511, *11-12 (D. Colo. Aug. 21, 2009).  As such, *Bustos* does not bolster the Plaintiff's argument.

I find that Public Advocate and Rocky Mountain's use of Edwards and Privitere's name and likeness was primarily noncommercial and that it reasonably relates to a legitimate matter of public concern.  As such, the First Amendment privilege bars the Plaintiffs' Colorado state law tort claim for appropriation of name or likeness and that claim is DISMISSED WITH PREJUDICE.

## C.  Plaintiffs' Copyright Infringement Claim

In order to prevail on a claim for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*, a plaintiff must establish:  "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citing *Harper & Row, Publrs.* v. *Nation Enters.*, 471 U.S. 539, 548 (1985)).  Even if a plaintiff establishes these two elements, the Copyright Act provides a safe harbor for a defendant's fair use of material otherwise protected by copyright. *See* 17 U.S.C. § 107.  The Defendants argue that their use of the photo constitutes fair use under 17 U.S.C. § 107.

### 1.  Fair Use

When determining whether the fair use doctrine bars a copyright infringement

claim, courts consider the following factors:

> (1) the purpose and character of the use, including whether
> such use is of a commercial nature or is for nonprofit
> educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in
> relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or
> value of the copyrighted work.

17 U.S.C. § 107.  The fair use doctrine calls for a "case-by-case" analysis. *Harper &*

*Row, Publrs*., 471 U.S. at 549.  "Fair use is a mixed question of law and fact." *Id.* at 560

(citing *Pacific & Southern Co. v. Duncan*, 744 F.2d 1490, 1495 n.8 (11th Cir. 1984)).

### a.  Purpose and Character of the Use, Including Whether Such Use is of a Commercial Nature or is for Nonprofit Educational Purposes

Public Advocate states that "use of the Mailers was purely educational as part of

Public Advocate's permissible efforts to inform the voters in the Colorado Republican

primary regarding the issue of traditional family values." ECF No. 102, p. 12, ¶ 2.  While

use for nonprofit educational purposes is valid under this factor, Public Advocate's use

of the photo is not the type of "education" contemplated by the statute.  17 U.S.C. § 107

states that fair use of copyrighted works "for purposes such as . . . teaching (including

multiple copies for classroom use), scholarship, or research, is not an infringement of

copyright."  That language suggests that the educational purposes contemplated by the

statute's drafters relates to schooling, not mailers circulated during an election.  Thus, I

am not persuaded by Public Advocate's argument.

The Defendants also state that their use of the photo was "transformative" and for political purposes.  The Defendants cite to *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994), for the statement that "the more transformative the new work, the less will be significance of other factors, like commercialism, that may weigh against a finding of fair use."  Defendants state that their use of the photo was "highly transformative." ECF No. 107, p. 13, ¶ 2.  I disagree.  A use is transformative if it "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Campbell*, 510 U.S. at 579.  The Defendants did nothing to the lifted portion of the photo, save removing the bottom portion of Edwards and Privitere's legs.  The Defendants merely took the lifted portion and superimposed it on a mailer.  While the Defendants placed the lifted portion in a different background and placed a caption on the mailer, such actions cannot be characterized as "highly transformative."  Further, the mere fact that the photo was used for political purposes does not bolster the Defendants' argument.  Thus, this factor does not favor application of the fair use doctrine.

### b.  Nature of the Copyrighted Work

"Under this factor, the more creative a work, the more protection it should be accorded from copying; correlatively, the more informational or functional the plaintiff's work, the broader should be the scope of the fair use defense." 4 NIMMER on COPYRIGHT § 1305.  In paragraphs 39 – 41 of the First Amended Complaint [ECF No. 92], the Plaintiffs allege numerous facts regarding Hill's creative touch on the photo *e.g.*, choosing the exact pose, camera angle, focal length of lens, aperture, shutter speed, lighting, and the photo's color.  Inspection of the photo reveals that it is more creative

than informational or functional and that Hill, as a professional wedding photographer, took special care in taking the photo and making sure it depicted the appropriate tone for the occasion.  Thus, this factor does not favor application of the fair use doctrine.

### c.  The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole

The Defendants are correct in arguing that they only used a portion of the photo. They state that "[t]he image of the 'kissing men' is at most 20% of the image that Defendants used in their mailers and it is also only about 20% of the copyrighted Photograph." ECF No. 107, p. 13, ¶ 4.  Public Advocate states that the Defendants "transformed the photo by the addition of an entirely different background which removes the big city feel and places the individuals in a country setting . . . " ECF No. 102, p. 12, ¶ 4, and p. 13, ¶ 1.

As I previously stated when analyzing the character and purpose of the Defendants' use, the Defendants used the focal point, the most important portion of the photo:  Edwards and Privitere holding hands and kissing.  The "qualitative nature of the taking" is important. *Harper & Row, Publrs.*, 471 U.S. at 565.  The *quantity* of a taking does not necessarily determine the *quality* of the taking. *See, e.g., Roy Export Co. Establishment etc. v. Columbia Broadcasting Sys. Inc.*, 503 F. Supp. 1137, 1145 (S.D. N.Y. Dec. 17, 1980) ("And even assuming that CBS' use of some of the films was quantitatively small, the jury could have reasonably have concluded that it was qualitatively great").  Thus, just because the Defendants lifted approximately 20% of the photo and used it in their mailer does not automatically tip this factor in favor of applying the fair use doctrine.  Further, "a taking may not be excused merely because it is insubstantial with respect to the *infringing* work." *Harper & Row, Publrs.*, 471 U.S. at

565.  As Judge Learned Hand stated, "'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.'" *Id.* (*quoting Sheldon v. Metro-Goldwyn Pictures Corp.*, 82 F.2d 49, 56 (2d Cir. 1936), *cert. denied*, 298 U.S. 669 (1936)). Because of the quality of this taking, I find that this factor does not favor application of the fair use doctrine.

### d.  The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work

This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether the unrestricted and widespread conduct engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (internal quotation marks and citations omitted).  This inquiry "'must take account not only of the harm to the original but also to the market for derivative works.'" *Id.* (quoting *Harper & Row, Publrs.*, 471 U.S. at 568).

This factor, more than any other factor, is evidence driven.  While I could speculate on the photo's market and potential market, I believe that would be improper. Based on the facts of this specific case, analysis of this element is better left for a stage in the proceedings where the parties present evidence *i.e.*, summary judgment or trial. As such, I find that the Plaintiffs' have stated a plausible copyright infringement claim under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and I DENY Public Advocate and the Defendants' Motions To Dismiss [ECF No. 101 & 106] to the extent they seek dismissal of the Plaintiffs' copyright infringement claim based on the fair use doctrine.

## CONCLUSION

After careful consideration of the matters before this Court, it is

ORDERED that Public Advocate's Motion To Dismiss Plaintiffs' First Amended

Complaint [ECF No. 101] and NAGR, Rocky Mountain, O'Dell, Andrew Brown, and

Dudley Brown's Motion To Dismiss The First Amended Complaint [ECF No. 106] are

**GRANTED IN PART** and **DENIED IN PART**.  The motions are **GRANTED** to the extent

that the First Amendment bars the Plaintiffs' Colorado state law appropriation of name

or likeness tort claim, and that claim is **DISMISSED WITH PREJUDICE**.  The motions

are **DENIED** to the extent that Public Advocate and the Defendants seek dismissal of

the Plaintiffs' copyright infringement claim based on the fair use doctrine.

Dated:  March 31, 2014.

BY THE COURT:


/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge